UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUANG "BRADLEY" HONG,

    Plaintiff,

v.

KEY SAFETY RESTRAINT
SYSTEMS, INC., ET AL.,

    Defendants.
_____/

Case No. 18-cv-10541

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
STEPHANIE DAWKINS DAVIS

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#29]**

**I. INTRODUCTION**

Plaintiff Bradley Hong initiated this employment discrimination suit on February 14, 2018, alleging violations of both state and federal law. Dkt. No. 1. Defendants now move for summary judgment on both claims in Plaintiff's Complaint. Dkt. No. 29.

Present before the Court is Defendants' Motion for Summary Judgment [#29]. After reviewing the briefs, the Court finds that it can resolve the matter without a hearing. *See* E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, the Court will DENY Defendants' Motion.

## II. BACKGROUND

Plaintiff Bradley Hong is a Chinese-American United States citizen who began working for Defendant Key Safety Restraint Systems ("KSS") on October 15, 2007 as its Vice President for Global IT. Dkt. No. 1, p. 2 (Pg. ID. 2). At all relevant times to this suit, KSS has been owned by Ningbo Joyson Electronic Corp. ("Joyson Electronic"), a Chinese company headquartered in Ningbo, China. Dkt. No. 29, p. 12 (Pg. ID 309).

In April 2017, Defendant Joe Perkins became Plaintiff's supervisor at KSS. *Id.* at p. 8 (Pg. ID 451). Plaintiff asserts that during staff meetings, Perkins would regularly make disparaging remarks directed at people of Chinese ethnicity, and specifically towards Joyson Electronic's leadership team. Dkt. No. 34, p. 8 (Pg. ID 451). Plaintiff claims Perkins would make statements such as, "Your Chinese people doing this" and "Your Chinese people doing that," and would frequently call ideas coming from Joyson Electronic, "F'ing stupid." Dkt. No. 29-5, p. 4-5 (Pg. ID 365-66). Jie Song -- a senior manager at KSS -- corroborated this pattern of behavior, testifying that when he previously worked with Perkins at a company called Nexteer, Perkins would use the "F word" in a way that was derogatory towards the Chinese. Dkt. No. 34-8, p. 12 (Pg. ID 538).[1]

---

[1] Jie Song also testified that he reported Perkins' conduct while at Nexteer. *See* Dkt. No. 34-8, p. 12 (Pg. ID 538).

At one particular meeting held the day before Plaintiff was terminated from KSS, Perkins was discussing Joyson Electronic's impending acquisition of a North American company. Dkt. No. 29-5, p. 7 (Pg. ID 368). During that discussion, Plaintiff claims Perkins made the following statement: "You know Trump doesn't like fucking Chinese, so the chance of that approval I guess is pretty low." *Id.* According to Plaintiff, Perkins then added, "Bradley, I don't mean you." *Id.* While Plaintiff acknowledges that Perkins' comments were typically aimed at Joyson Electronic, and never Plaintiff personally, he maintains that such comments made him feel uncomfortable. *Id.* at p. 5 (Pg. ID 366). Especially since Perkins would regularly single Plaintiff out by saying, "sorry, Bradley." *Id.*

On September 1, 2017, Yuxin Tang was appointed to serve as interim President of KSS. Dkt. No. 29, p. 13 (Pg. ID 310). Joyson Electronic directed Tang to begin taking measures to improve KSS's financial performance. *Id.* To that end, Tang informed the management team at KSS, which included Perkins, that the company would be undergoing a reduction in force ("RIF"). Dkt. No. 35-2, pp. 19-20 (Pg. ID 706-07). During a meeting held with the management team on October 2, 2017, Tang identified several positions within KSS that he thought could be eliminated during the RIF to help reduce expenses. Dkt. No. 29, p. 15 Pg. ID 312). He specifically identified five Vice President positions, including

Plaintiff's position of VP for IT. *See* Dkt. No. 29-2, p. 17 (Pg. ID 347).[2] Ultimately, however, Tang left it to the discretion of his management team to make recommendations as to who KSS should terminate. *See* Dkt. No. 35-2, p. 20 (Pg. ID 707) (Q: Did you give the US management team discretion to come up with a proposal as to how this would be accomplished? Tang: Yeah, based on this target I asked everybody to come up with a proposal and work with HR.).

On October 17, 2017, Perkins emailed Tang a list of individuals that he recommended terminating as a beginning point for the RIF. *See* Dkt. No. 29-8, pp. 13-14 (Pg. ID 395-96). Among the list of individuals was Plaintiff -- one of two Chinese employees that Perkins selected for the RIF. *Id.* In a sworn declaration, Tang claims that he specifically directed Perkins to place Plaintiff's name on the list because Tang had doubts about Plaintiff's potential moving forward. *See* Dkt. No. 29-2, p. 7 (pg. ID 337). But in an earlier deposition, Tang testified that the names on the termination list were presented to him by the management team. *See* Dkt. No. 35-2, p. 22 (Pg. ID 709). Further, that because he had just arrived in the United States, he trusted his management team to identify the right individuals to terminate. *See id.*

On October 27, 2017, Defendant KSS notified Plaintiff that he had been terminated as part of the RIF. Dkt. No. 34, p. 9 (Pg. ID 452). Following his

---

[2] Of the five VP positions identified during the meeting, only Plaintiff's position was actually eliminated during the RIF. Dkt. No. 34, p. 13 (Pg. ID 456).

termination, Nathen Rajen -- Plaintiff's subordinate -- assumed Plaintiff's job responsibilities. *Id.* at p. 13 (Pg. ID 456). According to Tang, Rajen took over as the functional head of IT, but without the title. *Id.* at pp. 13-14 (Pg. ID 456-57).

Plaintiff now brings the instant suit, alleging he was wrongfully terminated on account of his race, in violation of 42 U.S.C. § 1981 and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"). *See* Dkt. No. 1.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) empowers a court to grant summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1968). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere allegations or denials in the non-movant's pleadings will not suffice, nor will a mere scintilla of evidence supporting the non-moving party. *Id.* at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *Id.* at 252.

## IV. DISCUSSION

Defendants move for summary judgment on both claims raised in Plaintiff's Complaint, arguing Plaintiff has failed to present any direct or circumstantial evidence of discrimination. The Court will disagree.

Employment discrimination claims brought under § 1981 and the ELCRA are evaluated under the same standards and evidentiary structure. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). First, a claimant may satisfy their burden of proof at the summary judgment stage by presenting direct evidence of discrimination. *Id.* at 391 n.5. Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). Alternatively, a claimant may satisfy their burden through presenting circumstantial evidence of discrimination. *Id.* Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred. *Id.* (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)). Here, Plaintiff has presented circumstantial evidence of racial discrimination sufficient to satisfy his burden of proof at the summary judgment stage.

## A. Plaintiff has not Presented Direct Evidence of Racial Discrimination.

Direct evidence of intentional discrimination "must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [race], but also that the employer acted on that predisposition." *Hein v. All Am. Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000). The Sixth Circuit has held that "[a]ny discriminatory statements must come from decisionmakers to constitute evidence of discrimination." *Geiger v. Tower Auto.*, 579 F.3d 614, 620-21 (6th Cir. 2000). "Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." *Id.* at 621 (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)).

Here, while Perkins' remarks regarding the Chinese were certainly insulting and offensive, they do not constitute direct evidence of racial discrimination. Plaintiff acknowledged that Perkins' comments were never aimed at him personally; rather, they were generally directed at some business-related issue with Joyson Electronic -- KSS's parent company. *See* Dkt. No. 29-5, p. 5 (Pg. ID 366). Because these remarks were not made in relation to Plaintiff's discharge, they would require the factfinder to draw an inference to conclude that Plaintiff's termination was racially motivated. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) ("[D]irect evidence of discrimination does not require a factfinder

to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."). This does not constitute direct evidence of racial discrimination. *See Geiger*, 579 F.3d at 621 (holding statements by decisionmakers unrelated to the decisional process itself cannot satisfy plaintiff's burden of demonstrating animus).

### B. Plaintiff has Presented Circumstantial Evidence of Racial Discrimination.

"Absent direct evidence of discrimination, claims brought pursuant to Title VII's antidiscrimination provision, § 1981, and the Elliot-Larsen Act are subject to the tripartite burden-shifting framework first announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *White*, 533 F.3d at 391. Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* If satisfied, then "the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action." *Id.* "Finally, if the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination." *Id.* at 391-92.

### 1. Plaintiff has Established a *Prima Facie* Case of Racial Discrimination.

To establish a *prima facie* case of discrimination using circumstantial evidence, a plaintiff must demonstrate four elements: (1) that he was a member of a protected class; (2) that he was discharged; (3) that he was qualified for the position held; and (4) that he was replaced by someone outside of the protected class. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008). Only the fourth element is at issue here.

When termination arises as part of a RIF, the Sixth Circuit "has modified the fourth element to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Geiger*, 579 F.3d at 623 (quoting *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990)). For reference, "[a]n employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. A person is considered replaced 'only when another employee is hired or reassigned to perform the plaintiff's duties.' A person is not considered replaced when his duties are absorbed by another person 'or when the work is redistributed among other existing employees already performing related work.'" *Id.* (quoting *Barnes*, 896 F.2d at 1465).

Here, the evidence suggests that Plaintiff was terminated as part of a RIF at KSS. Though Yuxin Tang testified that Nathan Rajen became the functional head of IT following Plaintiff's termination, there is no evidence implying Rajen no longer performed his own job duties as well. *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 537 (6th Cir. 2014) ("[W]e have consistently found that a 'plaintiff's job was simply eliminated' when the plaintiff's 'former duties were assumed by [a younger employee], who performed them in addition to his other functions.'") (quoting *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 (6th Cir. 2012)). In fact, both Tang and Perkins testified that Rajen's job title remained the same, even after he assumed Plaintiff's responsibilities. *See* Dkt. No. 34-16, p. 3 (Pg. ID 615); Dkt. No. 29-9, p. 13 (Pg. ID 411). Considering that Rajen was Plaintiff's subordinate and already performing similar work, it makes logical sense that Rajen would be tasked with these additional responsibilities.

Because Plaintiff was terminated as part of a RIF, he must present additional direct, circumstantial, or statistical evidence indicating his employer singled him out for impermissible reasons. *See Geiger*, 579 F.3d at 623. Plaintiff can satisfy this burden, for example, by showing his employer "made statements indicative of a discriminatory motive." *See Barnes*, 896 F.2d at 1466.

As an initial matter, it is necessary to determine whether Defendant Perkins had influence over Plaintiff's discharge. *See Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 677 (6th Cir. 2008) ("[W]hen a plaintiff challenges his termination as motivated by a supervisor's discriminatory animus, he must offer evidence of a 'causal nexus' between the ultimate decisionmaker's decision to terminate the plaintiff and the supervisor's discriminatory animus."). While Yuxin Tang represents to be the ultimate decisionmaker, a reasonable juror could conclude that Tang deferred to the judgment of Perkins. Undeniably, Tang testified that he left it to the discretion of his management team to work with HR and come up with a proposal as to who KSS should terminate as part of the RIF. *See* Dkt. No. 35-2, p. 20 (Pg. ID 707). He also testified that since he had just arrived in the United States, he trusted his team to identify the right individuals to terminate. *See id.* at p. 22 (Pg. ID 709). Even more, that he did not require his team to justify their selections and did not make any changes to their selections. Dkt. No. 29-7, p. 6 (Pg. ID 382).

Still, Defendants argue that Tang was solely behind Plaintiff's firing because (1) he had previously identified Plaintiff's VP position among those VP positions that were expendable, and (2) he specifically directed Perkins to place Plaintiff on the termination list. In regard to the first argument, since only one out of the five VP positions that Tang identified were actually eliminated during the RIF, a

reasonable juror could conclude that the management team, not Tang, ultimately controlled the RIF. *See* Dkt. No. 34, p. 13 (Pg. ID 456).

The same can be said with respect to Defendants' second argument. During his deposition, Tang testified that his management team presented him with a list of individuals to terminate during the RIF, not the other way around. *See* Dkt. No. 29-7, p. 6 (Pg. ID 382). It was not until after this deposition that Tang gave a sworn declaration stating, "I instructed Mr. Perkins to place Mr. Hong on his list for job elimination." *See* Dkt. 29-2, p. 7 (Pg. ID 337). While these two accounts do not necessarily contradict one another, a reasonable juror could view them as inconsistent. And tellingly, Perkins would not confirm that Tang gave him this explicit instruction. *See* Dkt. No. 29-9, p. 11 (Pg. ID 409) (Q: So, basically you're saying Mr. Tang, who was the acting CEO at the time, put Mr. Hong on the RIF list? Perkins: He provided the first *indication* as to that direction, and then allowed me to *make a recommendation* that he was the final approver of.) (emphasis added).

In short, viewing the evidence in a light most favorable to Plaintiff, the Court finds that a reasonable juror could conclude that Perkins was either the decisionmaker behind Plaintiff's termination or at least influenced Plaintiff's termination. *See Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 723 (6th Cir. 2004)

(holding one supervisor's animus can be imputed to the final decisionmaker where there is evidence that the supervisor somehow influenced the termination decision). Hence, the question now becomes whether Plaintiff has provided sufficient circumstantial evidence of Perkins' alleged racial animus, such that it can be inferred that Plaintiff was terminated on account of his race. The Court finds that Plaintiff has carried that burden here.

Plaintiff has presented corroborated evidence that Perkins regularly made comments during staff meetings that could be seen as derogatory towards people of Chinese ethnicity. *See* (Jie Song Dep.) Dkt. No. 34-8, p. 12 (Pg. ID 538). And according to Plaintiff, Perkins would half-heartedly apologize for these comments, suggesting he recognized their inflammatory nature. *See* Dkt. No. 29-5, p. 5 (Pg. ID 366). While this is not direct evidence that Plaintiff was terminated on account of his race, it certainly suggests that Perkins may have harbored a discriminatory animus towards people of Chinese ethnicity. Accordingly, Plaintiff has provided the additional circumstantial evidence necessary to satisfy his burden of establishing a *prima facie* case of racial discrimination.

## 2. Defendants have Offered a Legitimate, Non-Discriminatory Reason for Plaintiff's Adverse Employment Action.

Neither party disputes whether Defendants' proffered reason for Plaintiff's termination -- the RIF -- qualifies as a legitimate, non-discriminatory justification.

Accordingly, the Court finds that Defendants have carried their burden at this second step of the *McDonnell-Douglas* framework.

### 3. Plaintiff has Presented Circumstantial Evidence Suggesting Perkins may have used the Reduction in Force as a Cover to Terminate Plaintiff on Account of his Race.

"A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was sufficient to warrant the challenged conduct.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). A reduction in force for economic reasons "does not operate as a complete defense" to a claim of employment discrimination, so long as the plaintiff "produce[s] sufficient evidence from which a jury could find that [the defendant] unlawfully implemented this reduction in force." *Kulling v. Grinders for Indus., Inc.*, 185 F. Supp. 2d 800, 805 (E.D. Mich. 2002).

Here, the Court has already highlighted the fact that Perkins regularly made remarks that could be viewed as derogatory by people of Chinese ethnicity. Importantly, these were more than just stray, irrelevant remarks. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998) ("[W]hen assessing the relevancy of an allegedly biased remark where the plaintiff presents

evidence of multiple discriminatory remarks or other evidence of pretext, we do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus."). At the very least, this provides some evidence upon which a reasonable juror could conclude that Perkins harbored racial animus and acted on this animus to either terminate or influence Plaintiff's termination under the cover of a RIF. This is especially true where, according to Tang, the management team was not required to justify their selection of employees terminated in the RIF. *See* Dkt. No. 29-7, p. 6 (Pg. ID 382).

While Perkins suggests he recommended Plaintiff's termination because Plaintiff was not meeting expected standards, Perkins could not recall any exact reasons for this assessment of Plaintiff's performance. *See id.* at pp. 5-6 (Pg. ID 403-04). Even when Perkins tried to articulate an explanation, he could not recall ever discussing those things with Plaintiff or documenting his concerns about Plaintiff's performance. *See id.* Notably, Jason Lou -- former CEO of KSS -- testified that during his tenure at KSS, Plaintiff had never been placed on a Performance Improvement Plan: KSS's formal process for handling employees performing below company standards. *See* Dkt. No. 34-23, pp. 6-9 (Pg. ID 669-72). This further calls into question the validity of Perkins' assessment.

In sum, Plaintiff has established a potential nexus between Perkins' alleged animus and Plaintiff's eventual termination. Construing all of the evidence and all reasonable inferences in a light most favorable to the non-moving party, the Court finds that Plaintiff has presented sufficient circumstantial evidence to suggest he may have been terminated in the RIF on account of his race. Finally, while not directly attributable to Perkins, the fact that KSS terminated only about half of the workforce it purportedly needed to discharge during the October RIF, and never followed up with a second RIF in December as planned, adds further suspicion surrounding the manner in which Plaintiff was fired. *See* Dkt. No. 34-11, pp. 5-6 (Pg. ID 552-53).[3]

## V. CONCLUSION

For the reasons stated herein, the Court will DENY Defendants' Motion for Summary Judgment [#29].

IT IS SO ORDERED.

Dated: April 3, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

---

[3] Deposition of HR Officer Joanne Thomas (Q: But when you only got 26 -- I mean, these names weren't adding up to the number you needed, correct? A: Correct.) (Q: And in terms of December, when in December was the next round done? A: It did not happen.).

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 3, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern  
Case Manager
